Judge Overstreet is not here today. He is a participant on this panel. He will listen to the oral arguments and the briefing and be a fully participating member of this panel. Counsel for the appellants you may proceed. May it please the court. Counsel. My name is Beth Harrington and I represent the appellants McDonalds USA, LLC and McDonalds Corporation in this appeal that was taken as a matter of right pursuant to Rule 307A1. I'll refer to the two appellants today collectively as McDonalds. Specifically, McDonalds is appealing only the St. Clair County Circuit Court Judge's August 2, 2018 decision granting plaintiffs motion to reconsider the court's June 25 order and or to lift the stay of the case. We submit that the Circuit Court erred when it granted plaintiffs motion to reconsider despite the Illinois Supreme Court's forthcoming resolution of the appeal in the case Rosenbach v. Six Flags Entertainment Corporation, which likely will be dispositive as to whether plaintiff will be able to proceed with their claims in this case. That's already been heard, hasn't it? It has. It was heard on November 20th of this year. We request today that the motion to reconsider be vacated by this court. Importantly, this is not an appeal of a motion to stay decision, but rather this is an appeal of a motion to reconsider that stay that the court earlier granted. When reviewing a motion to reconsider that is based on the trial court's purported misapplication of law, which happened in this case, the standard of review for the court is de novo. Plaintiff's putative class action case involves one cause of action, violation of the Illinois Biometrics Information Privacy Act, what Your Honor may know is referred to as BIPA. In order to have a right of action under BIPA, plaintiff must plead that she was somehow aggrieved by a BIPA violation. If she cannot, then her suit cannot proceed and she cannot be a class representative of a class action lawsuit in Illinois. As Your Honor had mentioned, on May 30th, as the court is likely aware on May 30th, the Illinois court granted leave to appeal the second district's decision in Rosenbach. In Rosenbach, the appellate court determined that plaintiff has not been aggrieved by a BIPA violation unless she alleges some actual harm. Rosenbach was argued before the Supreme Court recently and the decision should be forthcoming in the next several months. In this particular case, plaintiff worked for a company that is an unnamed McDonald's franchisee. That franchisee is not a party to this case. Plaintiff alleges that she had her biometric information collected for use in conjunction with her employment. Plaintiff's counsel argued to the trial court and may try to argue today that plaintiff has asserted some actual harm in the pending complaint. But plaintiff's counsel will not be able to point to a paragraph that alleges any such allegations in the complaint. Rather, plaintiff, in this case, as in Rosenbach, has asserted only technical violations of the BIPA statute. Therefore, Rosenbach is on point in this case and will impact this case one way or the other. It will impact whether or not this case also can proceed as a class action. After McDonald's filed its opening brief in this appeal, the first district decided the case Sakura v. Krishna Chamber 10, which plaintiff filed with the court as supplemental authority in this appeal. In that case, the appellate court reversed the trial court's dismissal of plaintiff's BIPA claims, stating that it was not persuaded by the second district's decision in Rosenbach, and that Rosenbach was distinguishable from the Sakura case because in Sakura, the plaintiff had alleged an injury to her legal right to privacy of her own biometric information by the disclosure of this information to an out-of-state third party, as well as had alleged mental anguish. In this case, there are no allegations that plaintiff's biometric information was shared to a third party. The fact that Sakura came out the opposite of Rosenbach only further supports McDonald's position that the circuit court's stay of this case in June 2018 was the correct course of action because the Illinois Supreme Court will provide authoritative guidance regarding what it means for a plaintiff to be aggrieved under BIPA. The St. Clair court at this point will have no way of knowing whether to follow the second district's decision in Rosenbach or the first district's decision in Sakura. Rosenbach is not just any case. It is directly on point to this class action, and it will impact this case one way or another. For that reason, McDonald's filed its motion to stay in the circuit court on June 19, 2018, pending the outcome of Rosenbach. Plaintiffs had noticed their second motion to compel discovery from McDonald's on June 25, 2018. All parties appeared, and although McDonald's motion to stay was noticed up for the next day on June 26, the judge took up every pending motion, which included the motion to stay. At the hearing, plaintiffs' counsel did not object and argued their opposition. McDonald's argued that Rosenbach was directly on point, and McDonald's would be prejudiced by the continuation of the already extensive, time-consuming, and burdensome discovery that it had already encountered in the case and continued to experience. Plaintiffs' counsel argued that the motion to stay should be denied because Rosenbach wouldn't impact their case, and plaintiffs would be prejudiced by a stay because it was unclear when exactly Rosenbach would be decided. After counsel for both plaintiffs and McDonald's argued their stay motion on June 25, the court granted the stay. On July 12, 2018, plaintiffs filed their motion to reconsider. Under Illinois law, a motion to reconsider is not simply a do-over of the motion that had been decided previously. Rather, it can only be filed on three grounds. One is to bring the court's attention to newly discovered evidence that was not available at the time of the prior hearing. Two, changes in the law. Or three, errors in the court's previous application of existing law. Plaintiffs argued in their motion to reconsider that McDonald's somehow did not previously meet the standard for granting a motion to stay, its prior motion, that the appellate court, again, the appellate court and Rosenbach, was wrong in its interpretation of BIPOC. And then third, that an unpublished order from a separate St. Clair County circuit judge in a BIPOC case, Roberson v. Symphony Post-Acute Network, in which Judge Lopinow in St. Clair County denied a motion to stay the day after the circuit court, in this case granted McDonald's motion to stay, somehow constituted persuasive authority upon which the circuit court should now rely in reconsidering its stay of this BIPOC case. McDonald's filed an opposition to the motion to reconsider, demonstrating the plaintiff had not, indeed, raised any arguments that were appropriate for a motion to reconsider. Plaintiffs also cited BIPOC cases throughout Illinois where circuit courts had stayed the case, as our court did here initially. They stayed the case pending the decision in Rosenbach in the interest of judicial efficiency. The parties appeared again before the circuit court on the motion to reconsider on August 2nd. The August 2nd hearing on the motion to reconsider, plaintiff again claimed that Rosenbach appellate court effectively got it wrong, and that the Illinois Supreme Court would soon reverse Rosenbach. After hearing arguments from the party, the court referenced Judge Lopinow's subsequent denial of a defendant's motion to stay in the Roberson case, and stated from the bench that in the hierarchy of our courts, Judge Lopinow is above me, referring to the fact that at the time, Judge Lopinow was a circuit court judge, and Judge Coker, our judge in this case, was an associate judge. Judge Coker has since been elevated to a circuit court judge. The circuit court also stated that in St. Clair County, we really strive for a consistency on the fourth floor, and granted plaintiff's motion to reconsider, and therefore then lifted the stay of the case so the burdensome discovery could continue. When McDonald's asked the court to re-articulate the specific reasoning for granting the motion to reconsider and lifting the stay, the circuit court stated, there's a bunch of reasons. One of which was that for the next day, it wasn't fair to the plaintiff. The clear and convincing standard is a higher one than what is out there. The harm issue, whether there is, you know, there's harm to the parties, I don't find moving forward in discovery in this case is that much of a harm. I would say there's a big issue with us and consistency, and it is very problematic in our courthouse to have what ends up happening, then as procedural cases go one way or the other, and that creates a problem. So those are all issues and things that everyone raised in their briefs. At the end of the hearing, the court said, and should I say also, amongst other reasons raised by the party. So critically, in making his decision to lift the stay on this case, the circuit court did not say that there had been any newly discovered evidence, any changes in the law, or any specific error he made in the court's previous application of existing law. Predominantly, in the transcript, as part of the record, the circuit court instead decided to reverse course, primarily based on a subsequent order in a different case from a federal judge, which was decided the day after the motion to stay in this case. That is not an appropriate basis. I'm hoping that was not a federal judge. In a fellow, not federal, in a fellow trial judge, which is not an appropriate basis for the reconsideration motion. So his reasoning was that a circuit judge had more authority than an associate? He said that it was in the hierarchy of the Judge Lopino. Is that anywhere in his order? It says, actually, in the transcript, he says, in the hierarchy of our courts, Judge Lopino is above me. I don't believe that that means at all that the court needed to follow Judge Lopino, because Judge Lopino decided the case the next day after the motion to stay in this case was decided. As I previously noted, the JNOFO standard of review applies in this case because the circuit court's granting of plaintiff's motion to reconsider appears to have been based on the trial court's application of existing law. If a motion to reconsider is instead based on new legal theories, or new facts, then the applicable standard is the lesser abuse of discretion standard. However, none of plaintiff's arguments in the motion to reconsider constituted new legal theories, or presented new facts, such that an abuse of discretion standard should apply in this appeal. So the question for the court today, under the JNOFO standard of reviewing the motion to consider, is, did the circuit court misapply the law when granting McDonald's motion to stay on June 25th? The answer is, absolutely not. As noted in our brief, the Illinois Supreme Court, I'm sorry, the Illinois Appellate Courts, routinely affirm circuit court's orders stating similar actions when the Illinois Supreme Court decision will be significant in the case. We cited in our briefs Conn v. BDO Seidman, where the court noted that the test for whether granting a state is appropriate in this situation is whether the Supreme Court's decision would be significant to the litigation, not whether it would be completely dispositive of the litigation. Here there can be no dispute that Rosenbach will be significant to this case, if not entirely dispositive. In its motion to stay, McDonald's cited cases reflecting the sound principle that a state generally promotes efficiency and prevents a huge waste of resources when a higher court will be issuing a ruling that bears upon the pending litigation, something that the circuit court acknowledged when it initially granted McDonald's motion to stay. In this particular case, the discovery burden, which has all been on McDonald's, is significant and continues on a daily basis. As the appellate record reflects, there has been extensive written discovery. The discovery has resulted in over 150,000 pages of documents so far being produced. So the burden on McDonald's in this case is real. It's not hypothetical. Plante asserts in her appellate brief that McDonald's did not meet its burden to prove the necessity of a stay by clear and convincing evidence, and that McDonald's provided insufficient evidence of irreparable harm. Plante's argument is wrong for two reasons. First, McDonald's is not required to show any irreparable harm to demonstrate the circuit court's obvious second 2018 order should be vacated. That's just not the standard. Secondly, it's undisputed that McDonald's did meet the clear and convincing evidence standard when the court granted McDonald's motion to stay on June 25th. McDonald's explained that the case presents the same legal question as the question posed by Rosenblatt. McDonald's also met the clear and convincing standard by demonstrating that it has been already subject to very burdensome discovery to date and a stay would not prejudice the plaintiff at all. So all of this litigation that is ongoing in St. Clair County in this BIPA case may be unnecessary, wasteful, and duplicative in light of the forthcoming decision in Rosenblatt. For those reasons, there was no misapplication of law, and the circuit court got it right when it granted the motion to stay. Yet, the circuit court should not have granted plaintiff's motion to reconsider. And this court may review that decision under a de novo review standard without any deference to what the circuit court did whatsoever. Now, in appeal, the plaintiff alleges or asserts that the abuse of discretion standard should instead apply to this court's decision. But even under that lesser standard, the order granting plaintiff's motion to reconsider should be vacated. An abuse of discretion occurs when a trial court acted arbitrarily, exceeded the bounds of reason, or ignored or misapprehended the law. McDonald's respectfully submits that the circuit court in this case did act arbitrarily in granting the motion to reconsider. Plaintiff is a former employee of a McDonald's franchisee and therefore is not accruing any alleged damages on an ongoing basis. There is no prejudice to the named plaintiff if the stand remains. Plaintiff, in fact, has not alleged any actual harm in the case anywhere in the complaint. And McDonald's, I'm sorry, and plaintiff has produced exactly two pieces of paper in discovery in this case. Given the extreme prejudice to McDonald's of being put through massive statewide class litigation and discovery, and the lack of prejudice to plaintiff, the circuit court's granting of plaintiff's motion to consider warrants to be vacated, even under the abuse of discretion standard. It was error for the circuit court to base its decision on the Roberson court's denial of a motion to stay that was decided the next day. Illinois law is clear that unpublished trial court orders, they are non-presidential and they cannot be relied upon for any purpose. So there was no reason that a judge needed to follow Judge Locke's decision on the motion to stay in a different case. McDonald's should not be put through the process of having to relitigate issues if a judge in another courtroom comes out a different way in a different case. Here, the circuit court did feel compelled to rule consistently with his fellow judges' later decided Roberson order. And as I mentioned earlier, the circuit court stated on the record that in the hierarchy of the courts that Judge Lopino was above. But the circuit court's view of the Roberson order by Judge Lopino is wrong for at least two reasons. First, as I mentioned, the Roberson decision on the motion to stay in that case is not binding. And even if it could have been persuasive, had persuasive value, the decision in that case appears to erroneously conflate a motion to dismiss with a motion to stay as undercutting any value it would have in any respect. And two, even if the other trial court orders had precedential value, there were orders submitted to the court denying motions to stay. Thank you, counsel. We'll have an opportunity for rebuttal. Thank you. Counsel for the appellate. May it please the court. Good morning. My name is Gregory Pals. I'm an attorney for plaintiffs in the putative class. One of the lawyers also on the case are John Driscoll, John Barsevic, and C.J. Barsevic. Judge Morse, some of this may be familiar to you from past proceedings, but I would like to go over the history of BIPA briefly. BIPA is the Biometric Information Privacy Act. It was passed by the Illinois General Assembly as a suite of privacy protections to protect Illinois citizens. Included in that suite were the Genetic Information Privacy Act and the AIDS Confidentiality Act. So what we have here is a very, very weighty subject matter. And if you want to know just how weighty that subject matter is, all those pieces of law were passed by the Illinois General Assembly unanimously. Remember, we're talking about the Illinois General Assembly here. Unanimous. So that tells you pretty much all you need to know. This court, and I will return to this perhaps later, but this court has had previous occasion to address one of those suites of litigation, I'm sorry, of legislation, specifically the AIDS Confidentiality Act. And this court held long ago that actual harm was not necessary under the act. But I may return to that later or not, because as we will see, it's all a discussion of the merits, and the merits are not at issue in the case. It seems to me that the question at hand is essentially whether or not Rosenbach is dispositive. And that case has already been argued and probably is going to be issued soon. So what's your response to the dispositive nature of Rosenbach? It's not dispositive in any way. And I was interested to hear McDonald's challenge me to come up here and cite in the complaint where we had alleged actual harm, which of course is not at all at issue in Rosenbach or the current appeal before the Illinois Supreme Court. I'm happy to do so. That will be found in the supporting record pretty early on, SR3, where a plaintiff alleges that she seeks a claim for violation of her privacy rights and to recover statutory damages for defendants' unauthorized collection, storage, and use of biometric information. So this case is beyond Rosenbach. The issue is not at issue before the Illinois Supreme Court. And on a reading of Rosenbach, you will see that the court there expressly held that it had no jurisdiction to consider the claims of actual harm. The issue was not even before the court. It expressly disclaimed jurisdiction over that issue. That issue is presented squarely in this case and will be presented squarely going forward. Is there any more I can do to address that point at this juncture? Thank you. The jurisdiction of the court on this interlocutory appeal is limited to whether the trial court abused its discretion. What about counsel's argument that it's denial? As I termed it in my brief, that entire argument, which McDonald's argued at length, is unseemly, to put it charitably, hokey, to put it another way. The trial court admitted that when it said it was going to hear the motion to stay that day, that a docket error had been made. The motion to stay was not noticed for that day. McDonald's own counsel admitted in open court subsequently that that was true. The motion had not been noticed for that day. So we brought this up. We hadn't even had an opportunity to file our written reply. So we brought all this up in our motion for reconsideration and or to lift the stay. And the trial court candidly admitted at that time, at length in the record, that yes, the court had made a docketing mistake. Did you handle that hearing? I was present at that hearing. I did not argue that hearing specifically. In candor, you know, when a judge says go, often you go, right? I mean, I don't think it would be at all fair to hold against plaintiffs the fact that they spoke up on an issue that the court said it wanted to address, particularly in light of the fact that at the close of that hearing, the court expressly invited a motion for reconsideration. Judge Colker said, this is what I'm going to do. You know, please feel free to file your motion for reconsideration. So my feeling is that the record demonstrated that the judge was not necessarily certain about the ruling that day. But what is understood is that upon a motion for reconsideration and or to lift the stay, which is the alternative relief that was requested, Judge Colker candidly admitted. He looked at it and said there was a mistake in the docket. It shouldn't have been called up. Plaintiffs' counsel agreed at that time. This is all reflected in the transcript? It absolutely is. And so, and I believe I cite that in my brief if I do not, it is certainly in the transcript at length. And Judge Colker's ultimate ruling that brings us here today was that explicitly in black and white, yeah, the prior hearing wasn't fair to plaintiffs. And it wasn't. I mean, the judge said so, and it wasn't. So the entire notion that this was a nominal motion for reconsideration and, you know, that you have to bring up new facts and evidence or what have you, we didn't have an honest hearing the first time the judge admitted it. And so trying to get extended mileage out of the standard of review as it relates to that, you know, Is there anything more I can address on that point? What about counsel's argument that he based his ruling on Judge Lopino's ruling? First off, yes. Okay. Judge Colker did make the comment that, you know, he said last time I checked, something to the effect of last time I checked, Judge Lopino was above me, the record doesn't reflect it, but he actually flipped over his own nameplate. Judge Colker might point to the words associate on his nameplate. That whole discussion, while the point he was making was a serious one, he was being a little playful. Okay, he was speaking a little tongue-in-cheek in making this point. And I don't hate to see our court system get rid of that, quite frankly. I don't know how they do it in Chicago. But down here, yes, the judges can be a bit playful. They can say things tongue-in-cheek. His point was very serious, though. He was serious about it. But we don't want to encourage judge shopping. We just don't want to encourage judge shopping. And that's what defendants are asking for in saying you must overrule Judge Colker's decision, which was based in part of things other judges on the fourth floor were doing. That would be a horrible decision. They failed to mention that subsequently not only has Judge Lopino more or less confirmed his ruling to stay, as you know, but Judge Glynn also, in a BIPA case where we're counsel, denied a similar motion to stay. That may be up, too, I believe. So, yes, uniformity on the St. Clair County bench, I would respectfully submit, is perfectly appropriate and commendable to be encouraged because, as Judge Colker expressly pointed out, when you don't have that, all kinds of bad things happen at the courthouse. Is there anymore I can address on that issue? No, thank you. Thank you. I would like to point out that, you know, in the main anyway, this is not your normal interlocutory appeal of a motion to stay. What is the purpose of interlocutory appeals with respect to motions to stay? It is for the appellate court to promptly review whether there is a threat of immediate and irreparable harm. And so you get cases such as, you know, a child is on the verge of being taken out of state or somebody wants to cut off somebody's life support. They're about to, you know, bulldoze a building. Those are really the reasons why the rule was devised and why the appellate rule equally was devised. This is not that case. And when this is simply about bringing litigation grinding to a halt on the notion that the Supreme Court may rule one way or the other, but has been, as has been recognized by the circuit judges and this and other cases, if you brought litigation to a halt, every single time the Supreme Court might rule on an issue that would affect the case, nothing would ever move forward. The Supreme Court hears cases all the time on many issues. That would be a disaster. So the notion that courts routinely grant motions in those circumstances I think was overstated. You may be able to scour the books and find a few. As I point out in my brief, you could also scour the books and find cases where it would be much more applicable, such as we have a case here in Illinois between exactly the same parties. And, oh, there's a case out in Pennsylvania between exactly the same parties on exactly the same issue. Much more appropriate to such arguments, you know, than occur here. And the Illinois court said, no, we're not going to stay on that basis. So, you know, the rapid dissimilarities of parties, legal issues such as actual harm, et cetera, et cetera, The trial court, let's strike that, please. The burden in the trial court was always on McDonald's, and it was to show that a stay of litigation was necessary by clear and convincing evidence. And clear and convincing evidence is perhaps the highest burden known to the civil law, I would respectfully submit. McDonald's did not support that burden virtually in any way. McDonald's argument is we don't want to litigate, it's a thorn in our side, and therefore by clear and convincing evidence there is the immediate threat of irreparable harm. And that simply doesn't wash, I mean, I respectfully submit. Also mentioned by McDonald's was the notion that it is undisputed that the clear and convincing evidence showed a stay was necessary. I don't know where that comes from. I think the record is clear that, you know, at every single opportunity, we certainly contested that that had been shown by clear and convincing evidence or any other standard, really. McDonald's, as you heard, McDonald's in very large part relies, or at least this was a theme before the trial court, McDonald's brought it up here, this notion that, you know, McDonald's has produced, I believe the quote was, 150,000 pages of information. And I'll return to that momentarily, but I'd like to bring up the reason why the appellate standard of review is what it is, and the appellate standard of review is an abuse of discretion. Abuse of discretion is, I submit, perhaps the highest, most onus level of appellate review known, at least in the civil law. And bear with me just one moment. The O.I. cases phrase it thusly, whether the trial court's ruling was arbitrary, fanciful, or unreasonable, or where no reasonable person could adopt its view. I've never liked that because it's a horrible double negative. I would respectfully submit that, you know, the more digestible way to say it is that the trial court does not abuse its discretion when any reasonable person could agree with its view. And any reasonable person could look at the facts, look at the circumstances, look at the quote-unquote evidence, of which there was no true evidence, that McDonald's presented in the trial court, and any reasonable person could easily agree that a stay is not warranted in this case for all of the reasons that Judge Coker set forth in his opinion. Now, I said I'd return to this notion of 150,000 pages of documents. The reason, in part, why the standard of review is so high in this court is because the trial court is on the ground and knows the intricacies and intimacies of the proceeding far better than this court ever could. For example, discovery has been discussed numerous times, at length, at numerous hearings, and, you know, while 150 pages of information may sound significant, what Judge Coker, I would believe, understands is that, well, McDonald's is just doing day-to-day counts. You know, McDonald's has a well-funded IT department. They're drawing off a bunch of electronic information and dumping that on us without regard to whether we even asked for it or whether we need it or whether it's germane at the present point in time. As we have pointed out to Judge Coker, because this notion of the amount produced has been a repeating refrain in the trial court as well, you know, we haven't gotten one or two of the basics that we've asked for. So, you know, it doesn't make a difference that there's this amount of stuff that they've chosen to provide still unaddressed as what we've asked for, which is much more limited. And I won't get into the details of that because it's not appropriate. That's why the discretion of the trial court is relied upon. Absent, you know, some horrific violation of that discretion, the decision should be upheld. One more point on harm, and that is this. It's presented to the trial court here, presented to the court in other cases. The harm or threat of harm that truly exists is to plaintiffs because all McDonald's is complaining about is litigation. But, you know, every other party in the state that's in court has to go through litigation. McDonald's burden is no different than any other litigant. It is, I believe, a matter of common sense that when we're talking about McDonald's workers, any fast food workers in this industry is highly transitory, highly transitory. So while we're facing our circumstances where, you know, memories can fade, witnesses disappear, you know, those issues are clear and present in this case, and, you know, also augurs that we move forward. Getting a bit of attention here, but McDonald's only response in the court below to any of that was, well, we provided them with the addresses of employees. But that certainly doesn't mitigate, A, the disappearance factor or, B, the vanishing memory factor. So it's the real threat of harm is to plaintiffs. How many employees are we talking about? We haven't gotten information sufficient to determine that conclusively, Judge. They've provided a variety of lists of a variety of employees. And when I say lists, sometimes it's a stack, literally 8,000 single-page documents. With a handwritten name on it, okay? Not a type name, nothing we could search. Just a handwritten name that we would have to look through. So the answer is it's not clear. That's not clear right now. They've produced some list they say is a complete list of employees recently, and I mean in the past couple weeks or so. There's continuing issues with that, of which Judge Goldberg is well aware. We had a hearing on that very recently in the decision. He entered a provisional decision, and they're supposed to provide more information. So those are ongoing. I wish I could give you a more specific answer, but the fact of the matter is that data is in McDonald's hands, and it hasn't produced sufficiently for us to arrive at a reliable response. Thank you. Thank you for your time. Thank you, Counsel. Rebuttal. Thank you. Just a few quick points in rebuttal. At the outset of opposing counsel's argument, he said that there had been allegations of actual harm in the complaint and cited SR003. You have access to the record, and we'll review. But at 003, it restates that there have been technical violations. In other words, that the proper written consent or published notice hadn't been provided under BIPA. Those are technical violations of the BIPA statute. There is no actual harm that has been alleged as to this plaintiff, that any data was shared or anything happened to the data. Rather, the allegations in the case do not make reference to any actual harm of this particular plaintiff on page SR003 or otherwise. I want to talk very briefly about this docket error issue. It's important to understand that on June 25th, when the parties were before the court, the court, not the parties, not McDonald's or plaintiff, called up the motion to stay along with the motion to compel the plaintiff's file. The plaintiffs did not object to the hearing at all. Not during the hearing, not at the end of the hearing. Rather, they made arguments. They stood up and made arguments against the motion to stay. They never once said, this is unfair, Judge, let's all come back in the morning. Because remember, the motion to stay was up at 9 o'clock the next morning. So the parties had to come back. And it is in the judge's discretion to take up whatever motions he would like to when the parties are all before the court. I'd also like to note that in the record, on the July 12th, motion for reconsideration. I asked counsel if he participated in that hearing. Were you there? I was as well, yes. In their motion to reconsider that they filed on July 12th, they also did not bring that issue up. They didn't bring up the fact that it was noticed for the next day. McDonald's responded to the motion to reconsider and raised the fact that they had not filed a written response. And then at the hearing, we began talking about when, indeed, technically, the motion had been up. But there was no, at no point, prior to the motion to reconsider, hearing. It was never discussed that the motion should have been heard less than 24 hours later. Again, the motion was taken up by the judge. And as far as Judge Lopino's decision that was decided the next day, we want to be able to, and we should be able to, litigate our own case. We don't know what arguments were made there. We don't know what the record was there. The idea that now that McDonald's will be bound by later decisions by other courts in other courtrooms that they cannot participate in is patently unfair and does defy common sense. And just for the record, the court here did agree with our position that a motion to stay was warranted. He got it right the first time. We respectfully request that this court vacate the order of the circuit court granting plaintiffs a motion to reconsider with directions to reinstate the stay of this case pending the Illinois Supreme Court's decision in Rosenbach. Thank you. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course.